The next case up for argument is Assurance Wireless USA v. Reynolds. Good morning, Your Honors. Peter Karangia, for Appellant's Assurance et al. Your Honor, in denying a preliminary injunction, the District Court made multiple errors of law and thereby abused its discretion. This appeal largely centers on the first preliminary injunction factor, which is, of course, likelihood of success or serious questions going to the merits, because the District Court correctly found that appellants had established irreparable harm and the Court's public interest finding hinged on a legal error that goes directly to our primary merits argument. We set forth three independent grounds for likelihood of each. First, turning to our facial preemption claim under Section 254F of the Communications Act, that provision explicitly preempts any State's universal service rule that is, quote, inconsistent with counterpart FCC rules. Yet the District Court's order would render that express preemption clause meaningless, of course, contrary to basic... Okay, can I ask a question about that? So what's your best case for inconsistent with? Your Honor. What's that? We have two. If you count a case as FCC precedent, then it's the Open Internet Order. And I have a judicial case as well, but let me first, if I may, discuss the Open Internet Order. So in 2015, the FCC decided to impose so-called net neutrality rules. In that very lengthy order, the FCC addressed what happens with both Federal universal service contributions and State universal service contributions. And what the FCC said is, for policy reasons, we do not, the FCC, want to tax, and I use tax in a loose sense, we do not want to tax broadband. We want to incentivize it. We want providers providing broadband services. So we are not going to assess any Federal universal service fees on broadband revenues. Crucially, Your Honor, the FCC went one step further, and it said, similarly, States, when devising their universal service programs, must not assess State universal service fees on broadband. In other words, States cannot tax broadband either for policy reasons. And what the FCC said is, if they did, that, I'm quoting here, would be inconsistent with Federal policy and therefore preempted by Section 254F. So what we, and that's footnote 1477 in the Open Internet Order, and I would note that this has been a policy decision across administrations. In 2018, after the administration changed, the FCC returned to this issue, that's in the so-called Restoring Internet Freedom Order, and the FCC did decide to rescind the net neutrality rules. However, and this is relevant to this case, Your Honors, the FCC decided to stand by and continue that policy and statement from the Open Internet Order. And this, Your Honors, is in, I believe it's footnote 736. Let me, let me get, make sure. Would you say footnote what? This is in footnote 736 of the Restoring Internet Freedom Order. I love that there's 1,400 footnotes in the order. I mean. These FCC orders are, to put it mildly, pretty lengthy. But, but what you see is a footnote 736. That was also in the FCC Open Internet Order. I apologize, Your Honor. That was in the 2018 Restoring Internet Freedom Order. So we have two FCC orders. We have a 2015 order, and the 2015 order, the relevant passage, is footnote 1477. Switching to the subsequent 2018 order, that is footnote 736, and I'll quote. And have any, oh, go ahead. The court said, we note that we continue to preempt any state from imposing any new universal service fund contributions on broadband internet access services. Then it cites the 2015 order. So are there cases that have adopted that, or is this the first case that is, maybe that's where you're going with your. It is, and I would say our best case is Metrophones, which we addressed in our brief. And to be candid with the court, Metrophones was a different provision of the Federal Communications Act. That was. Now, so let me clarify your position, because the plain text of the statute does allow the state flexibility to enact its own rules, so long as it's not inconsistent. You're, you agree with that, right? I certainly agree with that. So then it really boils down to whether this is an inconsistency. As to our first claim, we have separate competitive. Right, right. That's exactly right, Your Honor. So explain to me why the carriers can't comply with both the FCC rules and the new state rules. I'm glad Your Honor asked that question, because I think this is crucial to avoid potential confusion. The FCC, sorry, the CPUC argues you cannot prove impossibility preemption. We agree. We haven't argued impossibility preemption. That's a totally distinct doctrine of preemption. In other words, it would say we are simply unable to comply with state rules on the one hand and federal rules on the other hand. We haven't argued that. We're not arguing that. We are arguing instead express preemption, completely different doctrine, and this court has said in a number of cases you follow the plain text of the statute, which we do. Why is it expressly preempted? Why is it inconsistent? I would submit, Your Honor, two reasons. First of all, the FCC has said in no uncertain terms we think the best way to go with universal service is a revenues-based approach, and not just a revenues-based approach. But that's for the FCC. That doesn't mean that the states can't go a different way. Well, subject, if there were no not inconsistent with the clause, I would agree with that, Your Honor. Well, you know, the district court said something, and I'm looking at my computer screen without my glasses on, and I can't find the exact way that the district court phrased it, so I'm going to paraphrase, but it really jumped out at me. And what the district court said is that there's no case that requires the state to be in lockstep with the FCC. And I think that's right. I would disagree. Respectfully, Your Honor, I don't agree with that. All right. So here we have a statute that plainly, as you indicated, allowed the state flexibility to come up with its own rules so long as it's not inconsistent. So long as. So we're together there. So long as. So long as it's not inconsistent. And it seems to me that your argument then relies on some sort of requirement of symmetry. Otherwise, it's expressly preempted. But I think that's where the district court has a good point is that what case requires that you both be in lockstep together. And for the symmetry point, I go back to the orders we were just discussing, the FCC orders. They do require symmetry. If they're a case, that's helpful to you. What's your best case for that? Well, if I may just finish up on the FCC precedent, then I'll turn to judicial precedent. So the FCC could have said, we, the FCC, have decided as a policy matter we don't want to tax broadband. We're only talking about the federal program. Is the FCC a party in this case? It's not a party in this case, Your Honor. But crucially, the FCC. Do we even owe the FCC any deference? Admittedly, I haven't focused on that statement. Do we owe them deference on that? Yes, under Chevron. Why? I don't think we do because, I mean, we're reading a statute. This is a statute that we can read a statute. I mean, there's no expertise. So, Your Honor, the Supreme Court addressed this exact issue in a case called Brand X. Justice Thomas wrote the opinion. What he said there is, and Your Honor raises a very interesting doctrinal point, which is what's the role of courts? What's the role of agencies? What Justice Thomas said in that case is if a provision could be read in potentially different ways, and the FCC has interpreted that in a certain way, we must. There's no ambiguity here. That's why I asked you if you are in agreement with us that the statute allows the state flexibility. So we start from that premise that the state has flexibility. Your Honor, it has flexibility subject to the not inconsistent with. My only submission on that, Your Honor, is that the FCC ought to. So you're saying refer to or give Chevron deference to the FCC's policy. Because there is no direct judicial precedent on point, certainly no appellate precedent. There is no appellate precedent interpreting this provision. So the next best thing is the FCC. The FCC is charged with interpreting this statute. It has interpreted it to require symmetry. If I could speak to the Metrophones case. That was a different provision of the Communications Act that governed payphone regulations. It was Section 276, of course. That's a different provision. However, I think the opinion is instructive because what that provision said is that state laws that are, quote, inconsistent with the FCC's payphone regulations are preempted. Now, the court went through three different state law claims that were at issue in that case. And the question was, does state law require compensation between different carriers? That, in some ways, differs from the amount that the FCC had set under its regulations. In other words, it's a very similar concept to what we have here. Is there a divergence or are they basically on the same page? Is there a parallelism? And the court went through three different state law claims. The first was an unjust enrichment claim or quantum merit. And what the court said is that the plaintiff, Metrophones, was seeking under state law exactly the same rate of compensation for various calls at issue as it would have been entitled to receive under federal regulations. In other words, crucially, there was symmetry as to that claim. And the court said, well, because of that symmetry, no preemption. The court went on to address two other claims, and it made an observation that I think is relevant, too. But let me address the two other claims. Second, there was an implied, in fact, contract claim. And the court said, well, that's not preempted either, especially when it's seeking the same rate as under the FCC regulations. Again, symmetry, no preemption. Here's the difference. The court moved to a negligence claim. And what the court said is, look, the plaintiff is trying to impose liability on the defendant in a way that's very different from how the FCC has handled this. The FCC has detailed rules saying who can be responsible for certain payments and who cannot. And the plaintiff was basically trying to enlarge liability. But that seems like that's a direct conflict. It is, and I think we have a direct conflict here, too. Well, that's my question. Because, I mean, the other thing, I know you want to save some time for rebuttal, but if I can get your response quickly, 254F also says that, you know, it's not only the not inconsistent with FCC's rules, but the states have to act to preserve and advance universal service, and the states are expressly given the right to determine the manner necessary for preservation. True, subject to all other exceptions. But on the conflict preemption point, Your Honor, I think there are two conflicts. Number one, as I said, the FCC not only created a revenues-based rule rather than a connections-based rule, it created a revenues-based rule that is tethered to surchargeable telecommunications services. And as I discussed in connection with the Open Internet Order and the subsequent 2018 order, the FCC has said, look, we don't want to tax broadband, and we don't want states doing it either. So the problem is you have a CPUC rule, which is based solely on connections, completely indifferent to the nature of the underlying services. The CPUC's rule applies whether they're interstate services, whether they're intrastate services. It doesn't care, and that's a real problem. That creates a direct conflict, we submit, with the FCC's rule, because the FCC has created a rule to protect against taxation of broadband revenues, whereas the CPUC does not have that protection. And, in fact, the record shows for many wireless carriers, certainly for all of the plaintiff appellants here, the lion's share of their revenues are coming from these Internet data services, which you might expect because they're very popular services. I know you wanted to save a little bit of time. Yes, if I may briefly address another conflict. The FCC has also said we want a revenues-based rule because it's the best way of advancing universal service, it is competitively neutral, it is easily administrable, and it avoids economic distortions. That's in the FCC's 1977 order and a subsequent 1999 order. The CPUC explicitly rejected that position. If your honors look at excerpts of record, page 64 of the excerpts of record, the CPUC touted its rule because it said access line counts would not be subject to differences in carrier reporting methods and business models or FCC service classification. So, your honor, I think there you have an express repudiation of a policy judgment the FCC made. For those reasons, your honors, we believe there is clear preemption. We have separate competitive neutrality claims. I know I haven't had time to address those. We would ask the court to reverse with instructions to issue a preliminary injunction. Thank you, your honors. Thank you. Good morning, your honors. Hien Vo Winter representing the CPUC. This case is not about taxing broadband. The CPUC respectfully requests this court to affirm the district's court order denying appellant's preliminary injunction motion that sought to enjoin a flat rate access line surcharge that the CPUC adopted last year to stabilize California's universal service fund. The definition that the CPUC adopted under the CPUC's express authority under 254F limited the surcharge to voice telecommunications service. So, by definition, it does not and it cannot surcharge broadband. So, the fact that the FCC has these 2015-2018 orders has no bearing on the analysis here. It just doesn't trigger any surcharge. Because the 2015 is related only to broadband, is that the? It's related to broadband and it doesn't apply here because it. Why would 254F apply differently to broadband as opposed to any other form of communication? 254F is a statute that deals with state's authority to surcharge telecommunications service. So, broadband just isn't even encompassed. It does not encompass. What's the footnote that he read specifically said it would be preempted under 254F? Right, but we're not surcharging broadband. So, it would only be preempted if our surcharge applied to broadband. So, for instance, Your Honor, if appellants sold voice telecommunications service on a standalone basis, that is where the surcharge applies. If appellants sell broadband service on a standalone basis, by definition, the surcharge would not apply. And even if they bundle it, the nexus is still the connection to the voice telecommunications service. So, they can bundle 20 different services, but the fact that it's bundled with voice is the nexus for the access line surcharge. And, therefore, whatever policy decision the FCC made with respect to broadband doesn't apply here. I guess that's – I got to go read that a little more closely because I didn't understand his argument to be that it was a policy decision made as to broadband. It sounds like that was made in the context of broadband. Yes. But it's almost a definition of inconsistent with. And so, if I don't understand why inconsistent with would be read differently as to broadband, would be interpreted differently versus broadband versus voice. So, Your Honor, the analysis would be – it would be inconsistent if we were surcharging broadband. We're just not surcharging broadband. So, there is no inconsistency. So, the first provision – I understand your distinction there. What I'm trying to understand is, theoretically, like the FCC apparently, and you seem to agree, has said that at least within the context of broadband, it can be – surcharges can be inconsistent with what they are doing. Is that a – that seems to be an interpretation of the statute that they've applied. And what I don't understand is why that interpretation would be different for broadband than it would be for voice. Now, the FCC apparently hasn't weighed in on voice, but why would they be making a different interpretation of inconsistent with for voice than they would for broadband? Your Honor, I don't think that they're making – the inference from that case is not relevant here. And I would point, Your Honor, to the – Are they looking – were they looking at inconsistent with? They weren't really looking at that interpretation. They just said, here's an example of where a state could be inconsistent with the FCC's policy. But that's not the case here. And if Your Honor looks at – They weren't interpreting a statute in – They were not focused on that. They were focused – So, you're not – you're not reading that footnote as requiring symmetry? No, that footnote – that's the inference that appellants want the court to make, but that is not a reasonable inference. There is no case law that says states should be in lockstep with regard to their mechanisms to support universal service, because if that were the case, then the second and third provisions in 254F would be rendered meaningless. And Congress, under cooperative federalism, that is the framework under which 254F was enacted. Congress gave states that express flexibility. And this court, three years ago, in Metro PCS v. Picker, same appellant, looked at Section 254F in the context of another surcharge, the prepaid act surcharge that California had enacted. Can you address the preemption under the negligence claim that was in that case? Is it right that the preemption was found because the negligence – imposing negligence would be materially different and therefore conflict with the federal law on that? I'm sorry, Your Honor. The Metro PCS v. Picker case is not – I think you were referring to the Metro phones case upon which they're relying. Too many Metro – okay. So can you address that issue on the negligence case? So the Metro phones PCS – Metro phones case does not have – it wasn't a case that was looking at 254F. And there was no express preemption saying you needed symmetry. It just so happened that the rates that they were charging were the same as the FCC's, but there was no holding or no rule that said you have to have that. And that's what appellant's position rests on, is that these states must have the identical funding mechanism to fund a state universal service program, despite the fact that the state universal service programs and the federal universal service programs are different. They need the flexibility to address local matters. And there is no case law that supports the rule that states must be identical to the FCC with regard to funding mechanisms. And this court in Metro PCS v. Picker on the same issue of is the prepaid surcharge preempted, and the court said no, there is no presumption of preemption when we are working under a federal cooperative framework that Section 254F was enacted to address. And so universal service is very unique. There's 50 states. We need the flexibility to address local matters. And the record in this proceeding shows that the CPUC opened the proceeding because the universal service fund was not stable. And it was no longer fair. It was putting the burden on traditional wireline customers, even though wireless customers have the benefit of our communications network in California. Has this sort of issue come up in any other states? Not that I'm aware of, Your Honor. Other states also have adopted a similar access line surcharge that the CPUC decided to adopt last year. And there has been no challenges in court. The FCC presumably is aware, and they have never made any direct statement, any clear statement, or even addressed state's universal service mechanisms. They did debate the issue since 2002, should we move to an access line or connections-based mechanism, and took comments on that. But they have never said, you know what, we don't think that this is consistent with the Act. In fact, the FCC said that a connections-based mechanism is not inconsistent with the Act. And so the inference that appellants would like this court to make is just not tenable. And unless the court has any other questions. All right, thank you very much. Thank you, Your Honor. I think you've got a little bit of time. Thank you, Your Honor. I'll try to use it as quickly as possible. So the first point, Your Honors, I didn't hear any explanation as to why the logic should be different, if on the one hand it's conceded that the FCC required symmetry with respect to assessments on broadband, why it wouldn't require symmetry across the board. The FCC, I mean, footnote, the footnote we discussed in the open internet order speaks for itself. We believe it clearly does require symmetry. That's the logic of it. It is also not correct that the access line charge the CPC has created is limited to voice service. That's just not correct. If you look at the definitions, the surcharge kicks in so long as you're providing some voice service. But all of our companies provide voice and data and text. Right, but the nexus is for voice. The initial hook is for voice, Your Honor. But the result is because it's on the- You're saying the logic extends. The logic does extend, and the record shows 75-plus percent of their revenues are coming from data. So it is a tax on broadband, and you do need symmetry for that. You're over time, counsel. Thank you, Your Honor. Thank you very much, both sides, for your argument. The matter is submitted. We are going to take a brief recess. I should have but failed to mention that there's a lot of high school students sitting in observing the arguments this morning. So I hope you got something from that. Do you have a teacher accompanying you? I am there with them. Yes, I am the right counsel. I'm their American law teacher. Fantastic. Thank you for bringing them into the courtroom today. I understand that they want to join up with the rest of their class because we didn't have room for everybody. So we're going to take a break, and they can do that. We'll be happy to meet with them afterwards, but we've got another couple of cases to go. So we'll be in. Welcome. Welcome. We'll take a short recess. All rise.
judges: Siler, NGUYEN, NELSON